Date signed December 20, 2011



WENDELIN I. LIPP
U. S. BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
at Greenbelt

| | | |
|---|---|---|
| In re: | : | |
| | : | |
| Information Network, Inc., | : | Case No.: 07-19789-WIL |
| | : | Chapter 7 |
| Debtor. | : | |

## MEMORANDUM OPINION

Before the Court is the First and Final Application for Allowance of Fees and Reimbursement of Expenses to Special Counsel for Trustee (the "Fee Application") and the objections thereto filed by the United States Trustee and Paula Frankel. The Court has reviewed the Fee Application and related objections, and has considered the arguments and testimony presented at the hearing held on October 17, 2011. For the following reasons, Kramon & Graham, P.A. is allowed compensation in the amount of $36,921.00 and reimbursement of expenses in the amount of $2,702.96 for services provided to the Chapter 7 Trustee during the period from May 4, 2010, through April 5, 2011.

**I.   Background**

By way of background, on October 5, 2007, Information Network, Inc. (the "Debtor") filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code (the "Bankruptcy Proceeding"). On or about October 9, 2007, Roger Schlossberg was appointed as the Chapter 7

Trustee in the Bankruptcy Proceeding (the "Trustee"). On October 2, 2009, the Trustee filed Adversary Proceeding No. 09-00659 against Paula Frankel ("Frankel") pursuant to §§ 547 and 550 of the Bankruptcy Code to avoid and recover transfers from the Debtor to Frankel in the amount of $10,600.00 (the "Adversary Proceeding"). On May 11, 2010, the Trustee, concerned that he and his then current counsel may be required to testify as witnesses in the Adversary Proceeding regarding the disqualification of Frankel's husband from serving as her counsel, filed the Trustee's Application for Authority to Employ Kevin F. Arthur and Kramon & Graham, P.A. ("K & G") as special litigation counsel to the Trustee in the Adversary Proceeding. In his application, the Trustee proposed to employ K & G under a retainer agreement with fees based on K & G's normal hourly rates. The Court approved the Trustee's application by Order entered on June 10, 2010 (the "Employment Order"). The Employment Order authorizes the Trustee to employ K & G and provides that the "allowance and payment of fees and expenses shall be subject to further order of this Court." On June 25, 2010, the Trustee filed a Motion to Substitute K & G for Shapiro Sher Guinot & Sandler ("Shapiro Sher") as Trustee's counsel solely in the Adversary Proceeding. The Motion to Substitute was granted by Order entered June 29, 2010.

## II.     The Application and Objections

The Fee Application requests compensation in the amount of $100,571.00, plus reimbursement of out-of-pocket expenses in the amount of $2,702.96, for services provided to the Chapter 7 Trustee during the period from May 4, 2010, through April 5, 2011 (the "Application Period"). In its objection, the United States Trustee relies on *In re Taxman Clothing Co.*, 49 F.3d 310 (7th Cir. 1995), in which the United States Court of Appeals for the Seventh Circuit determined that fees incurred by counsel to the Chapter 11 trustee in pursuing a preference claim were not reasonable and necessary, as required by 11 U.S.C. § 330(a)(1). The United States

2

Trustee also argues that K & G breached its fiduciary duty to the bankruptcy estate by incurring excessive fees. The United States Trustee and Frankel both take the position that no fees should be awarded to K & G because their services provided no benefit to the Debtor's Bankruptcy Estate (the "Estate"). Both parties also assert that former counsel to the Trustee, Shapiro Sher, was awarded fees for the same litigation in the amount of $10,000.00, and the matter settled after protracted litigation for only $7,500.00. Lastly, the objections point out that the complaint initiating the Adversary Proceeding only sought the recovery of $10,600.00.

### III. Analysis

Pursuant to 11 U.S.C. § 330, this Court may award to a professional person employed under sections 327 or 1103:

> (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional personal employed by any such person; and
>
> (B) reimbursement for actual, necessary expenses.

11 U.S.C. § 330. In *Pope v. Vu (In re Vu)*, 366 B.R. 511, 515 (D. Md. 2007), the United States District Court for the District of Maryland set forth several factors courts must consider when determining the amount of reasonable compensation to be awarded to professional persons, including "whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title." In analyzing this factor, the *Vu* Court noted that "[c]ourts have reached different conclusions as to the proper construction of the requirement that attorney's services benefit the bankruptcy estate under Sections 330(a)(3)(C) and (4)(A)(ii)(I)." *Id.* at 516. Recognizing that this issue has not yet been addressed by the United States Court of Appeals for the Fourth Circuit, the *Vu* Court adopted the approach taken by the United States Court of Appeals for the Second Circuit, which held that "§

3

330 imposes an objective test 'based upon what services a reasonable lawyer or legal firm would have performed in the same circumstances.'" *Id. (quoting In re Ames Dep't. Stores, Inc.*, 76 F.3d 66, 72 (2d Cir. 1996)).  The *Vu* Court held that "[t]his language unambiguously requires consideration of whether, at the time the services were rendered, a reasonable attorney would have believed that they would benefit the estate, rather than a subsequent consideration of the practical effects actually achieved by an attorney's services." *Id.* at 517.

In addition to finding that the legal services benefitted the bankruptcy estate, bankruptcy courts must also determine the reasonableness of the fees sought.  "The burden of proof that services were actual and necessary and that the compensation requested is reasonable always rests upon the applicant who seeks the payment of professional fees from a bankruptcy estate, regardless of whether an objection has been filed." *In re Bernard Hill, Inc*., 133 B.R. 61, 69 (Bankr. D. Md. 1991).  To determine reasonableness, applications for compensation are analyzed under a hybrid of the lodestar analysis and a twelve-factor test, which was first expressed in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) and adopted by the Fourth Circuit in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir. 1978).  The twelve *Johnson* factors are:

>(1) the time and labor expended;
>
>(2) the novelty and difficulty of the question raised;
>
>(3) the skill required to properly perform the legal services rendered;
>
>(4) the attorney's opportunity costs in pressing the instant litigation;
>
>(5) the customary fee for like work;
>
>(6) the attorney's expectations at the outset of the litigation;
>
>(7) the time limitations imposed by the client or circumstances;
>
>(8) the amount in controversy and the results obtained;

> (9) the experience, reputation and ability of the attorney;
>
> (10) the undesirability of the case within the legal community in which the suit arose;
>
> (11) the nature and length of the professional relationship between attorney and client; and
>
> (12) attorney's fees awards in similar cases.

*See In re Vu*, 366 B.R. at 521. In *Anderson v. Morris*, the United States Court of Appeals for the Fourth Circuit recognized that the *Johnson* factors are difficult to quantify because some factors are overlapping, "'and there is no guidance as to the relative importance of each factor, or indeed, how they are to be applied in a given case.'" 658 F.2d 246, 249 (4th Cir. 1981)(*citing Northcross v. Bd. of Educ. of Memphis City Schools*, 611 F.2d 624, 642 (6th Cir. 1979)). Accordingly, in *Anderson*, the Fourth Circuit provided further guidance on application of the *Johnson* factors:

> The Court of Appeals of the Fifth Circuit, progenitor of the Johnson factors, has recognized these problems. It therefore has instructed district courts to first ascertain the nature and extent of the services supplied by the attorney from a statement showing the number of hours worked and an explanation of how these hours were spent. The court should next determine the customary hourly rate of compensation. These are essentially Johnson factors 1 and 5. The court should then multiply the number of hours reasonably expended by the customary hourly rate to determine an initial amount for the fee award. Finally, the court should adjust the fee on the basis of the other factors, briefly explaining how they affected the award. *In re First Colonial Corp. of America*, 544 F.2d 1291, 1298-1300 (5th Cir. 1977). *See also Copper Liquor, Inc. v. Adolph Coors Co.*, 624 F.2d 575, 581-84 (5th Cir. 1980). We endorse this manner of applying the Johnson factors.

*Id*.

In this case, with the exception of the twelfth *Johnson* factor, the Fee Application contained the required lodestar analysis and discussion of the *Johnson* factors. To begin, the

Court agrees with K & G that factors 7 (time limitations imposed by client or circumstances), 10 (the undesirability of the case) and 11 (the nature and length of the professional relationship with the client) have no real application to this proceeding. As for the remaining factors, the Court will follow *Anderson's* guidance and start its analysis with factors 1 (time and labor required) and 5 (the customary fee for like work). The Fee Application states that a total of 312.5 hours were spent on this case for a total of $100,571.00. Of that amount, $71,120.00 was incurred by Kevin Arthur at an hourly rate of $350.00 (203.2 total hours).[1] The five additional attorneys and/or staff who worked on this matter billed at an hourly rate between $140.00 and $320.00. The Court finds that K & G's rates, including Mr. Arthur's reduced rate, comport to the rates charged by other firms similar to K & G.[2]

As for the number of hours reasonably expended, K & G spent a total of 312.5 hours dedicated to the Adversary Proceeding. The Court has identified a few categories that consumed the bulk of K & G's time, the first category being the Trustee's attempt to disqualify Frankel's counsel. At the hearing held on October 17, 2011 (the "Fee Hearing"), Kevin Arthur testified that he was initially retained to brief the issue of whether David Frankel was disqualified from representing his wife, Paula Frankel, in the Adversary Proceeding. After briefing that issue, the matter was referred to the Attorney Grievance Commission for the State of Maryland for determination. The matter was ultimately resolved in Mr. Frankel's favor and this Court, at a

---

[1] The Fee Application states that Mr. Arthur's standard hourly rate is $450.00; however, he agreed to bill his time on this matter at $350.00 per hour "because this is the most favorable rate that he is permitted to afford to any client."

[2] The Court notes that the rates charged by K & G are considerably less than the rates charged by former counsel to the Trustee, Shapiro Sher, whose fee application reflects a billing range of $175.00 to $470.00 per hour. *See Dkt. No. 231*.

hearing held on June 22, 2010, denied the Trustee's Motion for Order Prohibiting Defendant from Appearing *Pro Se* and Striking Appearance of David Frankel as Counsel for Defendant. Exhibit 1 admitted into evidence at the Fee Hearing attributes $36,975.00 to the disqualification issue.

Another time-consuming issue concerned this Court's jurisdiction to conduct a jury trial in the Adversary Proceeding. At the hearing on June 22, 2010, Frankel challenged this Court's jurisdiction to conduct a jury trial and questioned whether the right to a jury trial had been waived based on the Trustee's alleged untimely consent. At the June 22, 2010 hearing, Kevin Arthur indicated to this Court that he had certain expertise on jury trial issues and offered to brief the issue. Thereafter, K & G briefed the jury trial issue and reached inconclusive results. Ultimately, this Court relied on its own analysis to determine that the Trustee's consent to trial by jury was timely. Exhibit 1 admitted into evidence at the Fee Hearing attributes $10,288.00 to the jury trial issue.

A third category of services that occupied a significant portion of K & G's time is the Trustee's Motion for Summary Judgment and the Trustee's Opposition to Frankel's Cross-Motion for Summary Judgment. Exhibit 1 attributes in excess of $24,600.00 to the cross motions for summary judgment. This Court held a hearing on the cross motions for summary judgment on December 13, 2010. At that hearing, the Court denied the Trustee's Motion for Summary Judgment, without prejudice, because the Trustee failed to address a necessary element to grant the relief requested. The Trustee was given one week to supplement his motion. However, before this Court was required to rule on the Trustee's Supplemental Motion for Summary Judgment, Assistant United States Trustee Gerard Vetter brokered a settlement resolving the Adversary Proceeding in its entirety.

The Trustee testified in support of the Fee Application at the Fee Hearing. The Trustee testified that the Adversary Proceeding needed to be prosecuted and not abandoned in order to protect his reputation as a trustee who will not settle in the face of a litigious adversary. The objections, on the other hand, ask this Court to deny any compensation to K & G because their services provided no benefit to the Estate. Relying on *In re Taxman*, the United States Trustee argues that the fees incurred were not reasonable and/or necessary, and that K & G breached its fiduciary duty to the estate. According to Mr. Vetter, and as reflected in the record of this case, the Adversary Proceeding was one of the last adversary proceedings left to be resolved. At the point in time that K & G entered the case, there was no benefit to continuing the litigation because the attorney's fees and costs would exceed any financial benefit to the estate.

As previously stated, K & G was retained by the Trustee because of its expertise in professional responsibility matters. From the inception of K & G's retention on May 4, 2010, to the hearing on June 22, 2010, where the Trustee's disqualification motion was denied, K & G incurred $36,921.00 in fees. The time records attached to the Fee Application reflect that during this time, K & G dealt with the disqualification issue, discovery issues, cross-motions for sanctions, and Frankel's recusal motion. Applying the objective standard adopted in *In re Vu* to the circumstances of this case, it is reasonable to assume that had David Frankel been disqualified from representing his wife, the litigious nature of this proceeding may have disappeared and a settlement most likely would have been reached earlier—similar to the other twenty adversary proceedings settled by the Trustee in this case. After the June 22, 2010 hearing when David Frankel was not disqualified, K & G and the Trustee had reason to know, based on the multiple filings in the Adversary Proceeding up to that point, that this case should be immediately settled

or abandoned as having no benefit to the Estate. The Trustee's position that his reputation needed to be upheld was untenable at that stage in the case. The creditors of the Estate should not bear the burden of legal fees that could never be recouped. By June 22, 2010, the legal fees and costs between the two firms was approaching $100,000.00 to collect a maximum recovery of $10,600.00. Accordingly, this Court will not award any fees that were incurred after the June 22, 2010 hearing because any services rendered after that date provided no benefit to the Estate and were not reasonable. As set forth in *In re Vu,* it is at that point that a reasonable attorney would have believed that further services would provide no benefit to the Estate. *In re Vu*, 366 B.R. at 517.

Now that the Court has determined the initial fee award, it must determine whether that amount warrants a further adjustment after considering the remaining *Johnson* factors. *See Anderson v. Morris*, 658 F.2d at 249. As for the second *Johnson* factor—the novelty and difficulty of the questions involved—this matter involved a $10,600.00 preference action and was one of thirty preference actions commenced by the Trustee in this bankruptcy case. K & G asserts that although this case did not present any particularly novel questions, the case involved a number of difficult issues stemming from the "enormous volume of Frankel's filings . . . ." This Court agrees that the Adversary Proceeding presented some challenging issues.

The third *Johnson* factor—the skill required to properly perform the legal services rendered—will be addressed below in the context of the ninth *Johnson* factor.

With respect to the fourth *Johnson* factor—the attorney's opportunity costs in pressing the instant litigation—the Fee Application makes clear that K & G dedicated substantial resources to its representation of the Trustee. The Court, however, has insufficient information to find that K

& G's work on this matter caused it to divert its attention from other potentially remunerative matters.

In addressing the sixth *Johnson* factor—the attorney's expectations at the outset of the litigation—K & G states that it expected to be compensated for its work regardless of whether any recovery was obtained for the Trustee. With respect to this factor, the Court notes that K & G was aware that any compensation sought in connection with this matter would be subject to review and approval by this Court. Further, early in its representation of the Trustee, K & G knew that this Court was concerned about the amount of fees incurred in this matter and was assured by the Trustee that he would personally bear the burden of the litigation costs to protect K & G. The Trustee is now asking the Estate to bear that burden.

With respect to the eighth *Johnson* factor—the amount involved and the results obtained—and as set forth in the Fee Application, the Adversary Proceeding sought to avoid and recover $10,600.00 paid by the Debtor to Frankel during the ninety-day period preceding the Debtor's bankruptcy filing. The Assistant United States Trustee ultimately brokered an agreement for Frankel to pay $7,500.00 to the Estate in settlement of the Adversary Proceeding.

In addressing the ninth *Johnson* factor—the experience, reputation and ability of the attorney—the Fee Application states that K & G is highly experienced and qualified in litigation, and that attorney Kevin Arthur has particular experience in litigation relating to ethical matters, which was particularly relevant to this proceeding. The Court has no reason to disagree with this analysis.

The last *Johnson* factor—attorney's fees awarded in similar cases—was not discussed in the Fee Application and is not relevant to the unique circumstances of this case.

In sum, the remaining *Johnson* factors do not warrant a further adjustment of the amount awarded to K & G.

## IV.    Conclusion

For the reasons set forth herein, K & G is awarded attorney's fees in the amount of $36,921.00, plus $2,702.96 for the reimbursement of their out-of-pocket expenses incurred in connection with this matter. A separate Order will issue.


cc:     Daniel Joseph Zeller, Esquire
        Joshua D. Bradley, Esquire
        Richard Marc Goldberg, Esquire
        Shapiro Sher Guinot & Sandler
        36 South Charles Street
        Suite 2000
        Baltimore, Maryland 21201

        Linda D. Regenhart, Esquire
        Gary and Regenhart
        8500 Leesburg Pike, Suite 7000
        Vienna, Virginia 22182

        Office of the United States Trustee
        Gerard R. Vetter, Esquire
        6305 Ivy Lane, Suite 600
        Greenbelt, Maryland 20770

        Roger Schlossberg, Trustee
        134 W. Washington Street
        P.O. Box 4227
        Hagerstown, Maryland 21741


**END OF MEMORANDUM**